**UNITED STATES, Appellee,**

v.

**Lawrence L. BAKER, Specialist Four
U.S. Army, Appellant.**

No. 54,385.
CM 444679.

U.S. Court of Military Appeals.

August 10, 1987.

———

For Appellant: *Captain Lorraine Lee* (argued); *Colonel Brooks B. LaGrua, Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen* (on brief).

For Appellee: *Captain Samuel J. Rob* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson* (on brief); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Captain Patrick J. Cunningham.*

*Opinion of the Court*

SULLIVAN, Judge:

In May 1983 appellant was tried by a general court-martial composed of officer and enlisted members at Fort Clayton, Panama. Contrary to his pleas, he was found guilty of involuntary manslaughter and assault and battery upon a child under 16, in violation of Articles 119 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 919 and 928, respectively. He was sentenced to bad-conduct discharge, confinement for 2 years and 6 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion.

We granted appellant's petition for review to consider the following issue:

WHETHER THE EVIDENCE WAS SUFFICIENT TO SHOW GUILT OF MORE THAN NEGLIGENT HOMICIDE.

We hold, based on the evidence of record, that a rational trier of fact could have concluded beyond a reasonable doubt that appellant was guilty of involuntary manslaughter. *See generally Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d. 560 (1979); *United States v. Harper*, 22 M.J. 157 (C.M.A.1986).

The evidence shows that the alleged victim, 13–month-old Jeanie Jenkins, lived with her mother, Specialist Four Kelly Jenkins; her mother's fiance, Private First Class Donald Holm; and appellant's wife at his government quarters. Private Edward Kinser, a friend of appellant, also spent considerable time at the quarters and regularly ate dinner there. All of the residents of the quarters assisted Specialist Jenkins in caring for her daughter, Jeanie.

Specialist Jenkins testified that on the afternoon of January 19, 1983, she bathed Jeanie. At that time Jeanie had no bruises or other marks on her body indicating ill treatment. Between 1800 and 1900 Kinser came by. As Jenkins spoke to him outside the quarters, she heard Jeanie crying and saw appellant holding the child at the door to the quarters. Shortly thereafter she heard the baby's voice take on "a high pitched tone." Jenkins further testified that after she entered the quarters, she questioned appellant as to the whereabouts of the child. Appellant responded "that he had carried" the child "around...to show her that her mother wasn't there and then he threw" the child "into bed."

Jenkins did not then go into the room where the child was sleeping. However, she did go to the door and listen. When she heard nothing, she left, thinking that the child was asleep. About 2030 she retired herself. At that time she did observe the child, who appeared to be sleeping.

The following morning Jenkins overslept. She dressed hurriedly and left the quarters about 0630. When she returned about 1530, appellant's wife told her that "there was something wrong with Jeanie." Mrs. Baker further informed Specialist Jenkins that the child stayed in the bed all day. Efforts to have her sit or stand had been unsuccessful, and she had not opened her eyes for the entire day. At that point, Specialist Jenkins called the child's name. Jeanie turned towards her and briefly "opened her eyes." Efforts by Jenkins to rouse Jeanie were not successful. A fellow soldier took them to the base hospital. Enroute the child ceased to breath. Emergency room personnel restored her breathing but, despite this medical attention and surgery, Jeanie died.

Medical evidence showed that Jeanie had bruises on her throat and blood in her spinal fluid. There were hemorrhages in both eyes, with that in her right eye being marked. A "CAT" scan indicated that the right side of her brain was swollen. This was confirmed when an autopsy showed extreme swelling of the brain which was the actual cause of death. The injuries were consistent with blunt-force trauma to the skull of the child. In response to hypothetical questions as to the possible effect of an adult male of appellant's general physical proportions forcefully dropping Jeanie a distance of 8 to 10 inches onto a bed and pillow on the floor, three doctors testified that such action could have caused the injuries which led to the brain swelling and death.

Appellant was interviewed by the Criminal Investigation Command concerning this incident. In a sworn statement he related that on the evening of January 19, 1983, he had carried Jeanie to the bedroom to put her to bed. As he approached the bedroom door, he had reached for the door and in doing so dropped the child. He caught "her by the throat with" his "left hand...before she hit the floor." He then "held her up against the door with" his "left hand" while he "opened the door with" his right. Appellant's statement then reveals that he entered the bedroom and, after arranging the bed, "laid her down forcibly." He "did not hold onto her" as he placed her on the bed but "forced her downwards hard towards it and let go of her when she was about 8–10 inches or so from the floor." This caused her head to "hit the floor" with "a loud noise or thud." The statement further relates that appellant believed that this action had led to Jeanie's hospitalization the following day. Appellant also admitted that he "was angry" with the child for its continual "crying for no reason" and with

Specialist Jenkins for her inattention to the child. Finally, he stated his own anger at himself for dropping the child.

At trial appellant testified that, at his wife's direction, he had put Jeanie to bed about 2000 hours on January 19, 1983. In doing so he had picked her up by her arm and carried her down the hall in that manner. As he tried to open the bedroom door, he lost his grip and Jeanie fell. He stated that he caught her by the chin and neck with his left hand and held her against the door jamb while he opened the door with his right. He then entered the room and pushed the child to the bed from a height of about 8 to 10 inches. This caused "a thumping sound."

Appellant's wife told the court-martial that, at about 2000 hours on the evening in question, she was seated in the living room of her quarters watching television. Specialist Jenkins had begun to take out the garbage for the day. About the same time Private Edward Kinser came to the quarters to pick up several record albums. Specialist Jenkins asked Kinser to help her with the garbage. As the two soldiers left the house, they failed to secure the door. Jeanie began to follow them, and Mrs. Baker told appellant to bring her back into the house.

Mrs. Baker related that she saw appellant pick Jeanie up by one arm to bring her back. At that time she told appellant to put the child to bed. Appellant walked to the room where Specialist Jenkins and Jeanie slept, a distance of about 6 to 7 feet from the living room. He carried the child into the room, and Mrs. Baker "heard a noise that kind of sounded like a thud."

Private Kinser testified that he had been a frequent (almost daily) visitor to appellant's quarters. He believed that appellant was irritated by the continued presence of Specialist Jenkins and Jeanie in the quarters. Kinser had observed appellant treat Jeanie in an abusive manner. He had also been present on a prior occasion when appellant had picked the child up in a manner similar to "a rag doll" and carried her into her bedroom where he "heard a loud thud."

■ To find appellant guilty of involuntary manslaughter, the members had to conclude that appellant acted with culpable negligence. Art. 119(b)(1). Culpable negligence has been defined as "a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." Para. 198 b, Manual for Courts-Martial, United States, 1969 (Revised edition). The actor need not actually intend or foresee those consequences: it is only necessary that a reasonable person in such circumstances would have realized the substantial and unjustified danger created by his act. *United States v. Henderson*, 23 M.J. 77 (C.M.A.1986); *United States v. Brown*, 22 M.J. 448 (C.M.A.1986). Death is the reasonably foreseeable consequence required for involuntary manslaughter. Para. 198b, Manual, *supra*.

■ Appellant contends that his act of dropping a child 8 to 10 inches onto a pillow on a floor covered with several inches of padding was no more than simple negligence. However, the evidence shows that the victim was a 13–month-old infant who just prior to this incident had been forcefully grabbed by the throat and held against a door. It also established that this infant was thrown, not simply dropped, on the floor. Finally, the evidence indicates that this act was done with great force resulting in a violent impact. The force of the latter was such that it caused a sound loud enough to be heard by appellant's wife, who was some distance away in another room watching television. Medical evidence also demonstrated the violence of this act in that it was sufficient to cause hemorrhages to Jeanie's eyes and severe injury to her brain.

From this circumstantial evidence the members could have found that appellant had deliberately thrown his already battered victim to the floor with great force. *See generally* para. 74a (3), Manual, *supra*. They were not required to believe appellant's direct testimony at trial suggesting

that he carelessly dropped the child around 10 inches to a padded surface. *United States v. Williams,* 21 M.J. 360, 362 (C.M. A.1986). Moreover, the members could also have found that a reasonable person would have realized that such a violent act directed towards a child of such tender age created a substantial and unjustifiable danger of death. *See generally United States v. Henderson, supra* 23 M.J. at 79–80. Accordingly, the members could properly find on this record that appellant was guilty of involuntary manslaughter rather than negligent homicide.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.