**UNITED STATES, Appellee,**

v.

**Jose M. MARTINEZ, Sergeant,
U.S. Army, Appellant.**

**No. 98–0998.
Crim.App. No. 9501957.**

U.S. Court of Appeals for
the Armed Forces.

Argued April 28, 1999.

Decided Sept. 27, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Patricia A. Lewis* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Adele H. Odegard,* and *Major Leslie A. Nepper* (on brief).

For Appellee: *Captain Troy A. Smith* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Patricia A. Ham* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During August and October of 1995, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Campbell, Kentucky. Contrary to his pleas, he was found guilty of several offenses related to the death of 16–month–old Niko Martinez, *i.e.,* accessory after the fact to assault, involuntary manslaughter, child neglect, and misprision of a serious offense, in violation of Articles 79, 119, and 134, Uniform Code of Military Justice, 10 USC §§ 879, 919, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 13 years, forfeiture of $854 pay per month for 156 months, and reduction to the lowest enlisted grade. On July 3, 1996, the convening authority approved the sentence.

On May 29, 1998, the Court of Criminal Appeals, in an unpublished opinion, set aside appellant's convictions for child neglect and misprision, based on a government concession that they were multiplicious for findings with the remaining convictions, and it reassessed his sentence. It affirmed only so much of the sentence as provided for a dishonorable discharge, confinement for 11 years, forfeiture of $854 pay per month for 132 months, and reduction to E–1.

This Court granted review in this case on October 14, 1998, on the following issue of law:

WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT

APPELLANT BEYOND A REASONABLE DOUBT OF THE SPECIFICATION OF CHARGE I.*

We hold that the evidence was legally sufficient to support appellant's conviction for involuntary manslaughter. *See United States v. Baker*, 24 MJ 354 (CMA 1987); *see also United States v. Valdez*, 40 MJ 491 (CMA 1994) (unpremeditated murder conviction upheld on basis of evidence of calculated withholding of medical attention in case of glaring physical abuse); *see generally* Archbold, *Criminal Pleading, Evidence and Practice* § 19–107 at p. 1590 (1999) (common law of manslaughter by gross negligence).

The appellate court below, using its Article 66, UCMJ, 10 USC § 866, powers found the following facts concerning the charged offenses:

Appellant's son, N, was the second child born to his wife as the product of separate adulterous affairs that occurred while appellant was twice deployed overseas. The first child was given up for adoption. N was born on 4 October 1993, put up for adoption at the insistence of appellant, but later retrieved by his mother. Appellant concealed N's status by claiming that N was his wife's nephew. He never enrolled N as a dependent within the military benefits system. N died on 4 February 1995, primarily due to neglect and severe physical abuse at the hands of his mother and appellant's failure to act.

This abuse occurred over the span of at least four months, was progressive in its severity, and produced bruises on N's body literally from head to foot. The repeated "lumps" on N's head, as well as other physical signs, were noticed and commented on by relatives, with little evidence of concern on appellant's part. He admitted that he was aware of this evidence of injury to N; that he confronted his wife about these injuries; that he did not believe his wife's explanations, which made him "mad" at her; but that he otherwise did absolutely nothing about the situation.

The worst of the abuse apparently occurred about a week before N died. Among other acts, Mrs. Martinez admitted to losing control, hitting N, and slamming his head into the wall of the bedroom N shared with his three sisters. This act occurred on 2 February and was done with sufficient force that two large, round indentations were made in the wallboard.

About this time, N began to exhibit signs of physical distress. On 3 February, while taking care of N, appellant noticed that he was listless and had a fever. His sister, O, had also developed a fever and was taken to the hospital by Mrs. Martinez that evening. However, both appellant and his wife consciously decided not to seek similar medical attention for N. He died about six hours later. The autopsy indicated that he bled to death over the course of several days due to a blunt force, traumatic rupture of blood vessels connected to his digestive tract.

———

Our starting point in resolving the granted issue is the specification of involuntary manslaughter under Article 119(b), UCMJ, which

---

* We heard oral argument in this case at the United States Military Academy at West Point, New York, on April 28, 1999, at the invitation of the Department of Law, United States Military Academy, and without objection from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under Law: The Supreme Court in American Life* 15–18 (1965); *see also* D. O'Brien, *Storm Center: The Supreme Court in American Politics* 78, 135–40 (2d ed.1990). This procedure is similar to the well-established practice of a number of federal and state appellate courts that hold hearings at law schools and other public settings within their jurisdictions.

The United States Court of Appeals for the Armed Forces conducts a hearing such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates both the operation of a Federal appellate court and the criminal justice system of our Armed Forces, the Uniform Code of Military Justice (Arts. 1–146, 10 USC §§ 801–946, respectively). Project Outreach provides thousands of students, military personnel, attorneys, and members of the American public with an example of how our democracy maintains an Armed Force instilled with the appropriate discipline to make it a world power while affording members of that Armed Force a fair and impartial justice system under the protection of the Constitution of the United States and Federal law.

appellant was found guilty of violating. It states that appellant,

> on active duty, did, at or near Clarksville, Tennessee, between on or about 1 February 1995 and on or about 4 February 1995, *by culpable negligence, unlawfully kill an infant child, Niko Martinez, by means of failing to provide him with medical attention which was required for the injuries Niko Martinez suffered as a result of recent assaults by his mother,* Rebecca Martinez, to include striking and slapping him repeatedly, shoving his head against a floor, hitting him in the side with her fist, and slamming his head into a wall twice causing bruising and bleeding, *and other medical problems* from which Niko Martinez was suffering, to include a bloated, hard stomach, numerous bruises about the head and body, and a cut on his lip, *whereby as a result of some or all of these injuries alone or in combination with each other, Niko Martinez died.*

(Emphasis added.)

There is no dispute in this case that the prosecution was required to prove all the elements of this offense beyond a reasonable doubt. Art. 51(c), UCMJ, 10 USC § 851(c); *see generally* para. 44b(2), Part IV, Manual for Courts–Martial, United States (1995 ed.) (elements of involuntary manslaughter). Moreover, there also is no dispute that this Court reviews findings of guilty by a trial court using the standard of review provided in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Appellant's basic contention is that the evidence of record "falls substantially short of proving beyond a reasonable doubt that [he] was responsible for the death of the victim, Niko Martinez." He notes that the evidence is "undisputed .... that [his wife] struck the blow that caused the injuries which caused the death of the child." Final Brief at 4. He also notes that there was no evidence that he ever injured this child. Finally, he asserts that the prosecution's theory of his criminal liability, *i.e.,* culpably negligent conduct in failing to provide medical assistance to Niko, is not supported by the evidence in the rec-

ord. *See generally* para. 44c(2)(a)(i), Part IV, Manual, *supra.*

The existence of evidence of culpable negligence is the particular subject of this appeal. Appellant cites *Jackson v. Virginia, supra,* for the proposition that legally sufficient evidence means that, "considering the evidence in the light most favorable to the prosecution, a rational factfinder could have found all the essential elements of [the] offense beyond a reasonable doubt." Final Brief at 4. In this light, he contends that there was no evidence of any legal duty on his part to provide medical assistance to Niko Martinez. Assuming such a duty was shown to exist, he further argues that there was no evidence that he acted unreasonably in response to this duty or that he acted recklessly in failing to provide medical care to Niko. Absent this evidence, he asserts no culpable negligence could be lawfully found in his case.

## I

### *DUTY*

Appellant's first argument is that the evidence of record does not show that he had a duty to take Niko to the hospital for injuries inflicted by his wife and, therefore, he could not be legally found guilty of involuntary manslaughter based on culpable negligence. Indeed, the President, in the Manual for Courts–Martial, does discuss the negligence necessary for conviction of this offense as requiring a legal duty to act. He states:

> *Legal duty required.* When there is no legal duty to act there can be no neglect. Thus, when a stranger makes no effort to save a drowning person, or a person allows a beggar to freeze or starve to death, no crime is committed.

Para. 44c(2)(a)(ii), *supra.* We agree. However, we disagree with appellant that his record of trial does not show that he had such a legal duty to provide medical care to Niko Martinez under the circumstances of this case.

We initially note that military law recognizes a duty on the part of a person in appellant's situation to provide medical assistance. *See generally United States v. Mar-*

*tinez,* 42 MJ 327, 330 (1995) (question of duty is one of substantive military law). We have previously held that a parent has a duty to provide medical assistance to his or her child. *See generally Valdez,* 40 MJ at 495; *see also United States v. Robertson,* 37 MJ 432, 440 (CMA 1993) (Gierke, J., concurring). The record in this case shows that Niko was the biological son of appellant's wife, and appellant was listed on his birth certificate as his father. In addition, appellant admitted that Niko lived with his family; Niko considered him to be his parent; and he assumed the responsibilities of being a parent to Niko. While there was other evidence in this case that appellant may not have been the biological father of Niko, the members had ample evidence to find that appellant, under the circumstances of this case, had a parental duty as co-head of household to provide medical assistance to this child.

## II

### NEGLIGENCE

Appellant next asserts that, assuming he had a duty to provide medical care to Niko, there was no evidence of unreasonable or negligent conduct on his part in failing to do so under the circumstances of this case. He argues that, in view of the fact that Niko's visible injuries were not life-threatening, he acted reasonably in counseling his wife to take the child to the hospital the night before he died and in later relying on that request based on her assurances. He concludes that he made the wrong choice to trust his wife, but that it was not a negligent choice.

The record before us, however, contains evidence beyond that noted in appellant's argument. The record shows that appellant was well aware that Niko had been repeatedly bruised in the past while in his wife's care ("every other day"; "over a four month period") (R. at 479, 482). He also admitted that he had previously suspected his wife was abusing Niko. Moreover, evidence of recent physical battery was readily observable in his home, *i.e.,* blood was on the wall and curtains of Niko's bedroom, and there were two indentations on the wallboards. Finally, evidence was admitted that Niko's body was severely bruised when he died, and that appellant observed numerous bruises on his body during the week before his death. In these circumstances, we conclude that the members could find that appellant's reliance on a suspected child abusers assurances was an unreasonable response to his duty to provide medical care to this child. *Cf. Robertson, supra* at 438–39 (uncontroverted evidence that accused had no knowledge of scope and causes of victim's prior medical difficulties).

## III

### RECKLESSNESS

Appellant finally argues that there was no evidence that he acted recklessly in failing to obtain medical care for Niko. In other words, there was no showing that a reasonable person would foresee a life-threatening situation or the actual death of Niko as a consequence of his failure to take him to the hospital. *See* para. 44c(2)(a)(i), *supra.* We strongly disagree.

Appellant argues that a person who was not a doctor would not have suspected that Niko had a life-threatening abdominal injury; nor was it reasonably foreseeable that Niko would die as a result of appellant's failure to secure immediate medical assistance. Appellant notes evidence in the record that the bruises on Niko's body were not the cause of his death; nor would they cause a layman to suspect an abdominal injury. He further notes evidence suggesting that Niko otherwise exhibited flu-like symptoms as a result of the fatal abdominal injury. Finally, he asserts that as soon as his wife informed him that Niko had stopped breathing, he told her to call 911 and he began cardiopulmonary resuscitation.

A similar argument was made in *United States v. Baker, supra,* a case of involuntary manslaughter involving the death of a 13–month–old infant. There, this Court said:

To find appellant guilty of involuntary manslaughter, the members had to conclude that appellant acted with culpable negligence. Art. 119(b)(1). *Culpable negligence has been defined as "a negligent*

*act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission."* Para. 198b, Manual for Courts–Martial, United States, 1969 (Revised edition). *The actor need not actually intend or foresee those consequences: it is only necessary that a reasonable person in such circumstances would have realized the substantial and unjustified danger created by his act.* United States v. Henderson, 23 MJ 77 (CMA 1986); *United States v. Brown,* 22 MJ 448 (CMA 1986). Death is the reasonably foreseeable consequence required for involuntary manslaughter. Para. 198b, Manual, *supra.*

24 MJ at 356 (emphasis added).

We adhere to this standard again today.

In light of this standard, we note that Doctor Harlan testified to the symptoms Niko would have displayed during the time between his abdominal injury and his death. He said:

> Tears in the mesentary produce certain symptoms which may all be present or part of them may be present. These symptoms include irritability. They would include diarrhea, they would include nausea and vomiting, they would include such things as increased temperature or fever. They would include a general malaise ... that is, not feeling well ... and decreased activity on the part of the individual. They would have produced something called "guarding," which is the area is attempted to be protected from further injury by the person because they will hold their arms or hands over that area. There will also be a certain amount of rigidity of the abdomen which may be seen. Eventually or gradually, the individual will lose consciousness and there will be coma and subsequent death.

We are not persuaded that this testimony, in and of itself, would lead a reasonable person to conclude that a person with such symptoms was simply suffering from the flu. In any event, Niko was an 18–month–old child who had been repeatedly physically injured over the past 4 months while in his mother's care. Evidence was also admitted that appellant was fully aware of these repeated assaults and suggested medial assistance at various times. Finally, the defense experts testified that the most recent bruising of Niko was pronounced in appearance and might suggest intentional battering to even a layman. On this evidentiary basis, we conclude that the members could find beyond a reasonable doubt that a reasonable person would have considered death a substantial danger in the absence of medical assistance. *See United States v. Baker, supra* (tender age of child victim important factor in assessment of danger of death).

The decision of the United States Army Court of Criminal Appeals is affirmed.