**UNITED STATES of America**

v.

**Justin H. MCMURRIN, Gas Turbine System Technician Mechanical Fireman (E–3), U.S. Navy**

**NMCCA 200900475**

U.S. Navy–Marine Corps Court of Criminal Appeals

Sentence Adjudged: 16 February 2013

27 June 2013

**Military Judge:** CDR Aaron Rugh, JAGC, USN.

**Convening Authority:** Commander, Navy Region Midwest, Great Lakes, IL.

**Staff Judge Advocate's Recommendation:** LCDR M.H. Lee, JAGC, USN.

For Appellant: CAPT Paul LeBlanc, JAGC, USN; Capt Michael Berry, USMC; LT Gabriel Bradley, JAGC, USN.

For Appellee: Maj Paul Ervasti, USMC.

Before J.R. PERLAK, R.Q. WARD, B.L. PAYTON–O'BRIEN, Appellate Military Judges

## PUBLISHED OPINION OF THE COURT

WARD, Senior Judge:

At the appellant's first trial, a military judge, sitting alone as a general court-martial, convicted the appellant, after mixed pleas, of conspiracy to possess cocaine, violation of an order, wrongful use of cocaine, obstruction of justice, and negligent homicide, in violation of Articles 81, 92, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 912a, and 934. The military judge sentenced the appellant to 66 months confinement, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.

On 21 September 2010, this court set aside guilty findings for negligent homicide [1] and violating a lawful order and dismissed those underlying offenses. We affirmed the remaining findings of guilty, set aside the sentence, and authorized a rehearing on sentence only. *United States v. McMurrin*, 69 M.J. 591, 597 (N.M.Ct.Crim.App.2010). On 14 April 2011, the Court of Appeals for the Armed Forces (CAAF) affirmed our decision. *United States v. McMurrin*, 70 M.J. 15, 20 (C.A.A.F.2011). After denying the Government's petition for reconsideration, the CAAF granted the appellant's motion for issuance of a mandate and remanded this case to the Judge Advocate General of the Navy for further disposition by the CA.

■ After receiving the case, the CA referred additional charges to be combined with the rehearing on sentence.[2] Among these additional offenses was a charge and specification for negligent homicide under Article 134, UCMJ, based on the same underlying conduct prosecuted at the appellant's first court-martial.[3] At the combined rehearing, officer members found the appellant guilty of negligent homicide contrary to his pleas and, for this offense together with the remanded offenses, sentenced him to confinement for three years and six months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The CA disapproved 99 days of confinement and approved the remaining sentence as adjudged.[4]

The appellant now raises nine assignments of error: [5]

1. That his court-martial lacked jurisdiction over the negligent homicide charge because this court authorized a rehearing on sentence only after setting aside and dismissing the earlier negligent homicide conviction;

2. That the military judge erred when he ruled that the negligent homicide charge was not barred by double jeopardy;

3. That the military judge erred when he found the Government did not violate the appellant's Article 10, UCMJ, right to speedy trial;

4. That the military judge erred when he found the Government did not violate the appellant's Rule for Courts-Martial 707(b)(3)(D), Manual for Courts-Martial, United States (2008 ed.), right to speedy rehearing;

5. That the military judge erred when he ruled that the appellant was not entitled to have his appellate counsel represent him at his combined rehearing;

6. That the military judge erred when he ruled the Government did not unlawfully punish the appellant by treating him as an E–1 for rank and pay purposes;

---

1. At trial, the military judge found the appellant not guilty of the charged offense of involuntary manslaughter under Article 119, UCMJ, but guilty of the lesser included offense of negligent homicide under Article 134, UCMJ.

2. Rule for Courts-Martial 1107(e)(1)(D), Manual for Courts-Martial, United States (2008 ed.) provides that additional charges may be referred to trial together with charges as to which a rehearing has been directed.

3. The other additional charges referred by the CA and combined with the sentence rehearing were one specification of failure to obey an order, one specification of dereliction of duty, and one specification of a general disorder, in violation of Articles 92 and 134, UCMJ. The military judge dismissed these specifications before trial.

4. To the extent that the CA's action purports to direct that the punitive discharge will be executed after final judgment it is a legal nullity. *See United States v. Tarniewicz*, 70 M.J. 543 (N.M.Ct. Crim.App.2011).

5. Although not raised as error, we note a discrepancy between the modified convening orders and the members actually present at trial. The record of trial contains a total of four amending orders to the original order, Convening Order 1–09, issued on 11 February 11 2009. Amending Order 1C–09 dated 11 August 2009 detailed Lieutenant Commander (LCDR) AA to the court-martial and relieved Lieutenant (LT) IB as a member. LT IB was then relieved again, by Amending Order 1A–09 issued on 1 December 2011. None of the subsequent Amending Orders relieved LCDR AA as a member and she was not present at trial.

While the unexcused absence of LCDR AA as a detailed member at trial was error, we find no prejudice to the appellant in this case. *See United States v. Sargent*, 47 M.J. 367 (C.A.A.F.1997) (holding that unexcused absence of detailed member merited no relief where jurisdictional requirement for quorum was still met and the appellant made no showing of material prejudice to a substantial right).

7. That the appellant's negligent homicide conviction is legally and factually insufficient;

8. That the military judge erred when he found jurisdiction over the negligent homicide charge despite restricted line officers having improperly acted as the convening authority; and

9. That the Judge Advocate General of the Navy abused his discretion by certifying this case to the CAAF.

After careful consideration of the record, the pleadings of the parties and oral argument,[6] we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

### Factual Background

The underlying facts and procedural history of this case are outlined in the CAAF's decision of 2011 and our previous opinions.[7] At the appellant's combined rehearing in 2012, the panel heard much of the same evidence as was introduced at the appellant's first trial in 2009. Additional facts relevant to our discussion are provided below.

### Jurisdiction

The appellant's first assigned error raises the novel issue whether our setting aside a

6. On 16 May 2013, we heard oral argument addressing the appellant's first assigned error.

7. In addition to our earlier opinion, we also reviewed and denied the appellant's petition for extraordinary relief in the nature of a *writ of mandamus* raised during the pendency of his combined rehearing. *McMurrin v. United States,* 2011 CCA LEXIS 598 (N.M.Ct.Crim.App. 30 Nov 2011).

8. 28 M.J. 38 (C.M.A.1989).

9. Our decretal paragraph specifically stated:

> We set aside the guilty findings of negligent homicide and violating an order, dismiss Charges II and IV and the specifications thereunder. We affirm the remaining findings of guilty.
>
> . . . .
>
> We therefore set aside the approved sentence and order the record returned to an appropriate convening authority who may order a rehearing on sentence only.

guilty finding to a lesser included offense and dismissing the underlying offense bars reprosecution for that offense. Relying on *United States v. Montesinos,*[8] he argues that his combined rehearing lacked jurisdiction over the negligent homicide charge because the CA contravened our mandate by referring a charge based on the same offense previously dismissed by this court. Appellant's Brief of 26 Nov. 2012 at 6. The Government rejoins by pointing to the lack of any express prohibition in our mandate,[9] and argues that the negligent homicide charge met all five prerequisites of court-martial jurisdiction under R.C.M. 201(b).[10] Government Answer of 11 Mar 2013 at 20–25.

■■■■ We review jurisdictional questions *de novo. United States v. Nealy,* 71 M.J. 73, 75 (C.A.A.F.2012). In a broad sense, court-martial jurisdiction is met through the prerequisites listed under R.C.M. 201(b). However, following trial a CA "loses jurisdiction of the case once he has published his action or has officially notified the accused thereof." *Montesinos,* 28 M.J. at 42. In this sense, "jurisdiction" focuses on a lower court or CA's authority to take any further action on a case once promulgated. *See United States v. Boudreaux,* 35 M.J. 291, 294, n.4 (C.M.A. 1992).[11] At that point, a CA or intermediate

*McMurrin,* 69 M.J. at 597.

10. Under R.C.M. 201(b) a court-martial has jurisdiction when:
> (1) it is convened by an official empowered to convene it;
> (2) it is composed in accordance with the rules with respect to number and qualifications of its personnel;
> (3) each charge is referred by competent authority;
> (4) the accused is subject to court-martial jurisdiction; and
> (5) the offense is subject to court martial jurisdiction.

11. Military cases use traditional jurisdictional language when discussing a lower court or CA's compliance with an appellate court's mandate, and thus we find it appropriate to apply *de novo* review. *See United States v. Diaz,* 40 M.J. 335, 343–44 (C.M.A.1994) (CA loses jurisdiction over case once action is promulgated and only regains jurisdiction in the event of a remand); *United States v. Hernandez,* 33 M.J. 145, 147–48 (C.M.A. 1991) (lower court loses jurisdiction once case is

court can only take further action through remand. *United States v. Hernandez*, 33 M.J. 145, 148 (C.M.A.1991). Moreover, a remand grants authority only to the extent permitted by the terms of its mandate. *United States v. Riley*, 55 M.J. 185, 188 (C.A.A.F.2001). Consequently, a superior court's mandate returns jurisdiction to accomplish the explicit purpose of the mandate. The mandate therefore establishes a jurisdictional limit on the actions of the lower court or, as in this case, the actions of the CA.[12]

To answer the jurisdictional challenge raised by the appellant, we must decide whether the CA's referral of an additional charge of negligent homicide violated our earlier mandate. Answering that question first requires that we determine the scope of our mandate.

### Rule of Mandate

■■■ In simple terms, the rule of mandate requires that a lower court comply with a superior court's mandate. *Riley*, 55 M.J. at 188. The lower court or CA must respect the mandate and take action that conforms to the limitations and conditions prescribed. *See United States v. Stevens*, 27 C.M.R. 491, 492 n.1 (C.M.A.1959) (holding that a lower court or lower military echelon has no power to "modify, amend, alter, set aside, or in any manner disturb or depart from the judgment of the reviewing court"). But while a "mandate is controlling as to matters within its compass," the lower court or military authority is free to decide other issues not addressed by the mandate. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

1. Scope of the Mandate

Article 66(d), UCMJ, provides that when setting aside guilty findings and sentence "[we] may, except where [our action] is based on lack of sufficient evidence in the record to support the findings, order a rehearing." But if we do not order a rehearing, "[we] shall order that the charges be dismissed." *Id.* Left to choose between authorizing a rehearing on a charge for which the appellant was acquitted or a dismissal, we opted for the latter. Our statutory charter leaves little choice when, as here, the charge resulted in an acquittal and the lesser included offense derived therefrom is constitutionally infirm.[13]

Article 66(d), UCMJ also does not distinguish between dismissal and dismissal with prejudice. A dismissal with prejudice is "[a]n adjudication on the merits of the case, a final disposition of the controversy which bars the right to bring or maintain an action on the same claim or cause of action." BALLENTINE'S LAW DICTIONARY (3d ed.2010). Thus when a charge is dismissed with prejudice, further prosecution is barred. *United States v. Smead*, 68 M.J. 44, 65 (C.A.A.F. 2009).

■■■ While "dismissal is a drastic remedy," dismissal with prejudice is appropriate when an error cannot be rendered harmless. *United States v. Lewis*, 63 M.J. 405, 416 (C.A.A.F.2006) (citation omitted). Our courts have long recognized that certain trial errors can be so damaging that dismissal with prejudice is the appropriate remedy. These typically include unlawful command

---

appealed to the CAAF and can only regain jurisdiction through remand); *Montesinos*, 28 M.J. at 44 (the CA had "no independent statutory authority" under the UCMJ to act after the case was remanded because he was only "acting by delegation").

**12.** Federal circuits are split on the question whether a mandate is jurisdictional in nature. *Compare United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir.2007), *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir.1988), and *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir.1982) *with United States v. Matthews*, 312 F.3d 652, 657 (5th Cir.2002), *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed.Cir.2001); *United States v.*

*Moore*, 83 F.3d 1231, 1234 (10th Cir.1996); *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993).

**13.** The Manual provides the convening authority with a third option: ordering an "other trial." R.C.M. 1107(e)(2) provides that an "other trial" may be ordered when the original proceedings are invalid due to a lack of jurisdiction or a failure to state an offense. *Id.* A lesser included offense not properly before the court-martial is closely akin to a charge that fails to state an offense. Both defects derive from a lack of due process and notice under the Fifth and Sixth Amendments. *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F.2011).

influence,[14] speedy trial violations,[15] and ambiguous verdicts.[16] The distinguishing feature is that the error cannot be rendered harmless. We find no such incurable error present in this case. Furthermore, we will not presume prejudice attached to our dismissal in the absence of any such indication. *Cf. United States v. Stoker,* 522 F.2d 576, 580 (10th Cir.1975) (finding that "the absence of a specific indication that the dismissal is 'with prejudice,' indicate[s] that the dismissal is 'without prejudice' ").

As to the appellant's contention that our dismissal implied prejudice, we note that the intent and scope of our mandate is not governed solely by the terms in our decretal paragraph. *United States v. Jordan,* 35 M.J. 856, 861 (N.M.C.M.R.1992), *aff'd,* 38 M.J. 346 (C.M.A.1993). Indeed, "[t]he opinion delivered by [the] court at the time of rendering its decree, may be consulted to ascertain what was intended by its mandate." *In Re Sanford Fork & Tool Co.,* 160 U.S. 247, 256, 16 S.Ct. 291, 40 L.Ed. 414 (1895).[17] Nothing in our earlier opinion indicates that the underlying error cannot be rendered harmless at a retrial. Our opinion only addressed the lack of notice afforded the appellant by the lesser included offense, a situation remedied through referral of a proper negligent homicide specification at the appellant's combined rehearing. The absence of any discussion of prejudice undermines the appellant's contention that our mandate implicitly barred his subsequent prosecution.

### 2. Limited v. General Mandate

Another factor weighing against the appellant is the nature of our mandate. While not articulated in military jurisprudence, federal appellate courts have long recognized two types of mandates: general and limited.

*See, e.g., United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999) (limited remands "explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate .... [whereas] [g]eneral remands, in contrast, give district courts authority to address all matters so long as remaining consistent with the remand.") (citation omitted).

In the absence of any express prohibition, "the remand order is presumptively a general one." *United States v. Moore,* 131 F.3d 595, 598 (6th Cir.1997); *see also* 5 Am.Jur. 2d *Appellate Review* § 737 (2013) (In the absence of specific instructions, "[a] mandate does not generally preclude further proceedings not inconsistent with the mandate"). By contrast, a limited mandate "must convey clearly the intent to limit the scope of the [lower court or convening authority's] review .... [t]he language used to limit the remand should be, in effect, unmistakable." *Campbell,* 168 F.3d at 268.

The language in our opinion made no limitation, express or otherwise, on the subject of reprosecution. Nowhere is the subject of retrial raised and similarly none of the traditional policy reasons against retrial are addressed. The appellant argues essentially that reprosecution must be explicitly authorized by our mandate otherwise the Government is implicitly barred. In support, he relies on several military cases standing for the mandate rule, i.e., that a lower court or authority must follow the mandate of a superior court.[18] In each case, however, the action taken directly contravened the superior court's mandate. But with a general mandate, the lower court or CA may take any action so long as it is not inconsistent with the terms of the mandate. Yet the appellant

---

14. *See, e.g., Lewis,* 63 M.J. at 405.

15. *See, e.g., United States v. Dooley,* 61 M.J. 258, 263 (C.A.A.F.2005).

16. *See, e.g., United States v. Trew,* 68 M.J. 364, 369 (C.A.A.F.2010).

17. *See also United States v. Barnes,* 660 F.3d 1000, 1006 (7th Cir.2011) ("[t]his Court's decision to remand and our corresponding opinion dictate the scope of the remand.") (citation omitted); *United States v. Ben Zvi,* 242 F.3d 89, 95

(2d Cir.2001) ("To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate.") (quoting *United States v. Kikumura,* 947 F.2d 72, 76 (3d Cir.1991)) (internal quotation marks omitted).

18. *Montesinos,* 28 M.J. at 44; *United States v. Kepperling,* 29 C.M.R. 96, 99–100 (C.M.A.1960); *Stevens,* 27 C.M.R. at 492.

identifies no such contravening action, and we similarly find none present in his case. We therefore conclude that our general mandate did not bar the CA from referring the negligent homicide charge and specification to the appellant's combined rehearing.

### Double Jeopardy

 In a related assignment of error, the appellant argues that double jeopardy barred prosecution of negligent homicide at his combined rehearing. Whether double jeopardy applies is a question of law we review de novo. *United States v. Campbell*, 71 M.J. 19, 26–27 (C.A.A.F.2012) (Stucky, J., concurring in the result); *United States v. Sullivan*, No. 200602356, 2007 WL 2059800, at *2, 2007 CCA LEXIS 248, at *4, unpublished op. (N.M.Ct.Crim.App. 18 Jul 2007).

The Fifth Amendment guarantees that "[n]o person shall ... be subject, for the same offence, to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. This provision consists of three separate constitutional guarantees for an accused: 1) protection against a second prosecution for the same offense after an acquittal; 2) protection against a second prosecution for the same offense after a final conviction; and 3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Article 44, UCMJ incorporates these same constitutional guarantees for service members. *United States v. Easton*, 71 M.J. 168, 170 (C.A.A.F.1012) (citing *Wade v. Hunter*, 336 U.S. 684, 690, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

 Thus, once jeopardy attaches an accused "may not be retried for the same offense without consent once jeopardy has terminated." *Id.* at 172 (citing *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984)). A successful double jeopardy claim, therefore, must have two temporal components: first, that jeopardy attaches, and second, that it terminates. *Id.* Our resolution of the appellant's claim focuses on this latter component and rests

upon the concept of continuing jeopardy.[19] There is no dispute here that jeopardy attached to the appellant's conviction for negligent homicide at his first trial. More importantly, however, jeopardy did not terminate despite our setting aside his conviction. Instead, the original jeopardy continued uninterrupted because the "successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, *Burks v. United States*, [437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978),] poses no bar to further prosecution on the same charge." *United States v. Scott*, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Article 44(c), UCMJ, recognizes this concept of continuing jeopardy when it provides that "[n]o proceeding in which an accused has been found guilty by court-martial upon any charge or specification is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed."

Here, the appellant was found not guilty of involuntary manslaughter at his first trial, but guilty of the crime of negligent homicide, assumed at the time of trial to be a valid lesser included offense. The military judges verdict bars any reprosecution for the charged crime of involuntary manslaughter. *Green v. United States*, 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (conviction of a lesser included offense is an implicit acquittal of the greater offense and double jeopardy bars any subsequent prosecution of the greater offense). But this court's reversal of the appellants negligent homicide conviction does not implicate any of the three constitutional protections listed in *Pearce* : 1) he was not acquitted of negligent homicide; 2) his conviction was not final because we set aside that finding and dismissed the underlying charge; and finally 3) he was not subject to multiple punishments for the same offense since we set aside his sentence and authorized a sentence rehearing for the remaining guilty findings. *Pearce*, 395 U.S. at 717, 89 S.Ct. 2072.

---

19. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (recognizing that retrial after appellate reversal permits continued jeopardy because "criminal proceedings against an accused have not run their full course") (citation and internal quotation marks omitted).

In sum, the appellant's successful appeal did not preclude a reprosecution where we set aside his guilty finding because of a trial error unrelated to evidentiary insufficiency. *Scott, supra.* We conclude that the protections of the Double Jeopardy clause and Article 44, UCMJ, did not prohibit the CA from referring a charge of negligent homicide to the appellants combined rehearing.

### Factual and Legal Sufficiency

The appellant next argues that his conviction for negligent homicide is both factually and legally insufficient. We disagree. The record reveals that on the day in question the appellant and MMFR [S] were liberty buddies out in town. MMFR [S] indicated to the appellant earlier that day that he wanted to get some cocaine. That evening the two met up with an individual who identified himself as "Shorty." Shorty picked the two up in his car and supplied them with an amount of cocaine that both Sailors ingested while riding around in Shorty's car. Shorty then dropped the two off at a movie theater in a local mall.

While waiting in line at the theater, the two decided to forego the movie and contacted Shorty again to get some more cocaine. Shorty picked them up and, after stopping at a local residence, provided them with a rock of cocaine. MMFR [S] broke the rock up and snorted it while in Shorty's car. Later, while still riding around in Shorty's car, MMFR [S] asked him if he could get them some "boy," a reference to heroin. Shorty then took them to another location, where he obtained a small plastic baggie containing heroin. While in Shorty's car, MMFR [S] proceeded to snort the entire baggie's contents up his nose. The appellant would later tell police that Shorty seemed "surprised and upset" when MMFR [S] snorted the entire baggie by himself. Prosecution Exhibit 11. After snorting the baggie's contents, MMFR [S] quickly began to nod his head as if he was falling asleep and slur his speech. *Id.*

The appellant later admitted to police that MMFR [S]'s reaction immediately concerned him and he thought about calling 9–1–1, but chose not do so for fear of getting in trouble. Instead, he asked Shorty to drive them to a hotel 15 minutes away where some other Sailors were partying. At the hotel, he and Shorty carried the semi-conscious MMFR [S] out of the car and laid him in the grass by a parking lot in the rear of the hotel. Shorty then drove away. The appellant tried to rouse MMFR [S] by slapping him. When he registered little response, the appellant again thought about summoning help but opted not to because MMFR [S] was still breathing and he thought that maybe MMFR [S] would "sleep it off." *Id.* The appellant waited a few minutes more and, after realizing that MMFR [S] was somewhat out in the open, dragged him behind some nearby bushes. He then took MMFR's cell phone, debit card, military identification card and went up to the hotel room where the party was ongoing.

In the hotel room, the appellant socialized with others and drank a couple of beers. When asked, he lied about MMFR [S]'s whereabouts. Record at 940; PE 10 at 2. He later accompanied a friend when she went looking for MMFR [S] throughout the hotel. Record at 944. After a while, the appellant went back outside and checked on MMFR [S] again. The appellant again tried to rouse him by talking to him and lightly slapping him. Though still breathing, MMFR [S] gave little response. The appellant later described to police how after he went to a Wal–Mart with a friend to get some more beer, he checked on MMFR [S] again and realized MMFR [S] was not moving or breathing. PE 10, 11. Later that morning, the appellant threw MMFR [S]'s cell phone onto the roof at another hotel and dropped MMFR [S]'s military identification card and debit card in a trash can. PE 10 at 2.

An autopsy confirmed the cause of death as cocaine and heroin intoxication. At trial, the Government called medical professionals who testified that promptly administering the drug Narcan can immediately negate the toxic effects of heroin and could have been administered to MMFR [S] by paramedics on the scene. While there is no comparable drug that similarly counteracts the toxic effects of cocaine, experts testified that emergency medical personnel could have effectively treated common symptoms associated with cocaine intoxication. Testimony also revealed that two hospital emergency rooms

were located a short distance from the scene and emergency medical personnel could have reached MMFR [S] within minutes. Ultimately, while any amount of cocaine or heroin can be lethal, witnesses testified that death from a cocaine or heroin overdose can generally be prevented with prompt medical treatment.

 We review issues of legal and factual sufficiency *de novo. United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F.2002). The test for legal sufficiency is, considering the evidence in the light most favorable to the Government, whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Winckelmann,* 70 M.J. 403, 406 (C.A.A.F.2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses" this court is "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

The elements of negligent homicide under Article 134, UCMJ, as applied to this case are:

1. That MMFR [S] is dead;
2. That his death resulted from the act or failure to act of the appellant; [20]
3. That the killing by the appellant was unlawful;
4. That the act and failure to act of the appellant which caused the death amounted to simple negligence; and
5. That, under the circumstances, the conduct of the appellant was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), Part IV, ¶ 85b. The appellant focuses on elements 2, 4, and 5 and argues that his actions and inaction were not negligent, not the proximate cause of MMFR [S]'s death, and that the Government did not present any evidence on the terminal element. Our review of the record of trial convinces us otherwise.

In general, negligence requires a legal duty to act. MCM, Part IV, ¶ 44c(2)(a)(ii). Simple negligence is defined as the "absence of due care, that is, an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care of the safety of others which a reasonably careful person would have exercised under the same of similar circumstances." MCM, Part IV, ¶ 85c; *see also United States v. Brown,* 22 M.J. 448, 450 (C.M.A.1986) ("[n]egligence is distinguished from knowing or purposeful conduct in that it involves the creation of substantial and unjustifiable risk of which the person *should be aware* in view of all the circumstances") (citation omitted).

### 1. Duty

 A legal duty to act may be imposed by "treaty, statute, regulation, lawful order, standard operating procedure, or custom of the service." MCM, Part IV, ¶ 16c(3)(a); *see also United States v. Martinez,* 42 M.J. 327, 330 (C.A.A.F.1995) (legal duty to act can be established through military tradition, necessity and experience) (citing *Parker v. Levy,* 417 U.S. 733, 753–53, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). Unlike the appellant's original trial, the members at his combined rehearing heard no evidence of any liberty order which may have imposed a legal duty upon the appellant. But our analysis does not end there for duties imposed by common law may apply in the military justice system. *See United States v. Valdez,* 40 M.J. 491, 495 (C.M.A.1994) (adopting common law parental duty to obtain medical care for their children); *United States v. Martinez,* 52 M.J. 22, 25 (C.A.A.F.1999) (finding that appellant had a parental duty as co-head of household to provide medical assistance to his non-biological child). In this case, we find that common law imposed a legal duty of due care.

Although there is no "good Samaritan"

---

20. The Government's theory at trial was that the appellant's failure to seek medical treatment and concealing MMFR [S]'s body were proximate causes of his death.

duty generally to assist others in distress,[21] common law imposes a duty once one acts to render aid. *See* Restatement (Second) of Torts § 324 ("One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by . . . the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge. . . ."). Once the appellant voluntarily assumed care of MMFR [S], through his acts he assumed responsibility for MMFR [S]'s care while MMFR [S] remained unable to care for himself.

Upon recognizing MMFR [S] in obvious distress, had the appellant simply panicked and told Shorty to stop his car and let him out, perhaps he would have owed no duty to MMFR [S]. Instead, he directed Shorty to take them to the rear of the parking lot behind the hotel, dragged a semi-conscious MMFR [S] out of the car and laid him down in the grass. He then removed MMFR [S]'s cell phone, military identification and debit card from his person and subsequently moved MMFR [S]'s body away from open view. And after checking on him several more times but noticing no improvement, he still failed to take any action. Finally, he lied when asked about MMFR [S]'s whereabouts and accompanied a friend on an ill-fated search throughout the hotel.

We find that the appellant exercising this degree of dominion and control over an incapacitated MMFR [S] imposed a common law duty of due care. *See* 57A Am.Jur. 2d *Negligence* § 107 (2013) ("[O]ne who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself or herself, is liable for personal injuries to such other if by discontinuing the aid or protection he or she has left the other in a worse position than when he or she took charge.").[22] Furthermore, we find that the appellant's specific act of moving MMFR [S] to a more secluded location thereby hindering any third party from rendering assistance likewise imposed a legal duty.[23]

2. Degree of Care

■ Having found a legal duty, we must evaluate the appellant's degree of care to determine whether his actions amounted to simple negligence. We look to whether MMFR [S]'s death was foreseeable, that is "whether a reasonable person, in view of all the circumstances, would have realized the substantial and unjustifiable danger created by his acts or omissions." *United States v. Henderson,* 23 M.J. 77, 80 (C.M.A.1986). Although this objective test takes all circumstances into account, there is no subjective component assessing the "status or attributes of a particular person." *United States v. Oxendine,* 55 M.J. 323, 326 (C.A.A.F.2001) (rejecting a foreseeability test measured from the standpoint of a reasonable eighteen to twenty-year-old).[24] A reasonable person

**21.** *See* MCM, Part IV, ¶ 44c(2)(a)(ii) ("[w]hen there is no legal duty to act there can be no neglect. Thus, when a stranger makes no effort to save a drowning person, or a person allows a beggar to freeze or starve to death, no crime is committed").

**22.** *See also Farwell v. Keaton,* 396 Mich. 281, 291, 240 N.W.2d 217 (Mich.1976) (defendant had duty to companion after defendant voluntarily attempted to aid him but then left the companion alone and injured in a car where he died).

**23.** *See* Restatement (Second) of Torts § 305 ("An act may be negligent if the actor intends to prevent, or realizes or should realize that it is likely to prevent, another or a third person from taking action which the actor realizes or should realize is necessary for the aid or protection of the other."). *Accord State v. Streeper,* 727 N.W.2d 759, 767–68 (N.D.2007) (finding that defendant who injected deceased and was aware of overdose symptoms had affirmative duty based

on civil negligence principle that one can be liable for failing to render aid to another placed at risk by the former's conduct); *State v. Morgan,* 86 Wash.App. 74, 936 P.2d 20, 23 (1997) (finding that defendant husband, who helped inject deceased wife with lethal amount of cocaine, breached legal duty of care by failing to render aid in part because he helped create risk of harm); *People v. Oliver,* 210 Cal.App.3d 138, 258 Cal.Rptr. 138, 143–45 (1989) (in upholding manslaughter conviction, court relied upon common law negligence principles that legal duty arises when act or omission either creates or increases risk of harm or prevents assistance by others).

**24.** The appellant relies on *United States v. Riley,* 58 M.J. 305 (C.A.A.F.2003) to argue that we should consider his life experiences or lack thereof in evaluating his degree of care. Appellant's Brief at 45–46. In *Riley,* the CAAF found that the actions of the appellant did not rise to the level of culpable negligence because of her life

under these circumstances, i.e. observing MMFR [S] ingest a plastic baggie of heroin and immediately display adverse effects, would realize the substantial and unjustifiable danger created by not immediately summoning medical attention, and further exacerbated by moving him to a more secluded location. Even the appellant himself later admitted to police that he knew he should have called 9–1–1 but was afraid of getting in trouble. Record at 852, 854–55; PE 10, 11. Thus, we find that the appellant's acts and omissions were negligent.

### 3. Proximate cause

 The appellant next asserts that his conviction must be set aside because the Government failed to prove beyond a reasonable doubt that MMFR [S] would have survived "but for" the appellant's acts and omissions. In other words, the Government failed to prove that even with the indeterminable amount of cocaine and heroin MMFR [S] ingested, he would have survived had the appellant promptly sought medical attention. We disagree both with the appellant's definition of proximate cause and the nature of the evidence at trial.

 To be a proximate cause, "an act need not be the *sole* cause of death, nor must it be the immediate cause-the latest in time and space preceding the death," rather it must have a *"material role* in the victim's decease." *United States v. Lingenfelter,* 30 M.J. 302, 307 (C.M.A.1990) (quoting *United States v. Cooke,* 18 M.J. 152, 154 (C.M.A. 1984)) (emphasis added); *see also United States v. Houghton,* 32 C.M.R. 3, 5 (C.M.A. 1962) (stating that criminal responsibility for a homicide exists only if accused's act directly causes, or contributes to victim's death). Contributory negligence by the deceased is not a defense to negligent homicide, unless it "looms so large" that the accused's negligence is no longer "a substantial factor" in the victim's death. *Cooke,* 18 M.J. at 154

(quoting R. PERKINS, CRIMINAL LAW 698–701 (2d ed.1969)).

In this case, we find that the appellant's action and inaction both played a material role in MMFR [S]'s death. The record does not conclusively establish how long MMFR [S] remained alive after the appellant deposited him in the grass at the back of the hotel parking lot. By the appellant's own admission, he checked on MMFR [S] several times thereafter and found him still alive but only semi-conscious and unresponsive. Testimony from medical providers, however, did conclusively establish that emergency medical services were close by [25] and paramedics had the capability of administering the drug Narcan on scene. Additionally, expert testimony revealed that while the actual amount of cocaine and heroin MMFR [S] ingested was unknown, their toxicity could be effectively treated with prompt medical attention. The record also shows that MMFR [S] remained alive for a time well in excess of that necessary for emergency responders to reach the scene, administer emergency medical treatment and transport him to a hospital.

To be sure, MMFR [S]'s contributory negligence in ingesting illicit drugs also played a material role in his death. But his decision to do so did not "loom so large" that the appellant's negligent acts and failure to act were no longer "substantial factors." The appellant witnessed MMFR [S] consuming drugs and observed immediate adverse effects. He realized he should seek emergency medical services but instead moved MMFR [S] to more secluded location. Even though he saw no change in MMFR [S]'s condition, he still chose not to seek help. MMFR [S]'s initial action in ingesting unknown quantities of illegal drugs undoubtedly was a substantial factor in his death. But equally sure is the fact that the appellant's conduct deprived MMFR [S] of virtually any meaningful prospect for survival. For these reasons, we find that the appellant's acts and failures to act were proximate causes of MMFR [S]'s death.

experiences. 58 M.J. at 312. But the CAAF did determine that her actions amounted to simple negligence and, more importantly, specifically did not factor her life experiences into that analysis. *Id.* at 311–12.

**25.** A paramedic from the area testified that two hospitals were within approximately eight minutes of the hotel's location. Record at 903.

### 4. Terminal Element

■ Last, the appellant asserts that the Government failed to prove that his conduct was prejudicial to good order and discipline, or of a nature to bring discredit upon the armed forces.[26] Under the first clause, prejudice must be "reasonably direct and palpable." MCM Part IV, ¶ 60c(2)(a). In this case, the appellant's actions and inaction resulting in the death of a fellow service member had a reasonably direct and palpable prejudicial effect on the unit, on top of the military resources and personnel required to respond to an event of this magnitude. For the second clause, we note that actual public knowledge of the crime is not required. Instead, the proof necessary is that "activity would have tended to bring discredit upon the service had the public known of it." *United States v. Phillips,* 70 M.J. 161, 166 (C.A.A.F.2011). Under the facts of this case, where the appellant not only failed to seek any help for his liberty buddy succumbing to a drug overdose, but also hid him to avoid detection, we find sufficient evidence received at trial to establish that his acts and inaction were both prejudicial to good order and discipline and of a nature to bring discredit upon the service.

Accordingly, we find the evidence legally and factually sufficient to sustain the appellant's conviction for negligent homicide.

### Remaining Assignments of Error

We have carefully reviewed the appellant's remaining assignments of error and find them without merit. *United States v. Clifton,* 35 M.J. 79, 81 (C.M.A.1992).

### Conclusion

The findings and sentence as approved by the CA are affirmed.

Chief Judge PERLAK and Senior Judge PAYTON–O'BRIEN concur.

---

**26.** Although not raised as error, the Government charged the two clauses of the terminal element in the disjunctive rather than the conjunctive. We note that while charging in the disjunctive is generally disfavored, consistent with our recent opinion in *United States v. Miles,* 71 M.J. 671 (N.M.Ct.Crim.App.2012), we find that the pleading does not impede our Article 66(c), UCMJ, review.