# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BURTON, and RODRIGUEZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant THOMAS M. ADAMS**
**United States Army, Appellant**

ARMY 20130693

Headquarters, 1st Infantry Division and Fort Riley
J. Harper Cook, Military Judge
Colonel Jerrett W. Dunlap, Jr., Staff Judge Advocate

For Appellant:  Captain Alexander N. Hess, JA; Frank J. Spinner, Esquire (on brief, supplemental brief, and reply briefs).

For Appellee:  Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Thomas J. Darmofal, JA (on brief); Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA (on response to supplemental brief).

13 July 2020

-----------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
-----------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Appellant appeals his several convictions for sexually assaulting and abusing his minor step-daughter and niece.  We write to discuss the following of appellant's asserted errors:  (1) whether the court-martial lacked jurisdiction over the offenses; (2) whether double jeopardy barred the government from proceeding with the charges; (3) whether the statute of limitations expired for Specification 5 of Charge II; and (4) whether his conviction for production of child pornography is legally and factually insufficient.[1]  We disagree with all assertions, with the exception of the

---

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of aggravated sexual assault of a child, six specifications of indecent liberties with a child, one specification of indecent acts

(continued . . .)

legal and factual sufficiency of appellant's conviction for production child pornography, which we set aside and dismiss.[2] We affirm the remaining findings and reassess the sentence.[3]

## BACKGROUND

Appellant was originally tried and convicted for his misconduct in 2013.[4] *United States v. Adams*, ARMY 20130693, 2017 CCA LEXIS 6 (Army Ct. Crim.

---

(. . . continued)
with a child, one specification of production of child pornography, one specification of sodomy, one specification of aggravated sexual abuse of a child, and one specification of abusive sexual contact with a child, in violation of Articles 120, 125 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920, 925 and 934. The military judge sentenced appellant to a dishonorable discharge, confinement for forty-three years, total forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence and credited appellant with 2,086 days against his sentence to confinement. Appellant was found not guilty of the following offenses alleging he sexually assaulted and sexually abused his step-daughter, niece, and three other children: one specification of aggravated sexual abuse of a child; two specifications of sodomy of a child; three specifications of aggravated sexual assault of a child; two specifications of abusive sexual contact of a child; two specifications of indecent act with a child; and one specification of possession of child pornography in violation of Articles 120, 125, and 134, UCMJ.

[2] Although appellant claims all of his convictions are legally and factually insufficient, we only address the legal and factual sufficiency of his conviction for production of child pornography (Specification 1 of Charge III), and find all other charges and specifications legally and factually sufficient.

[3] Appellant also raised as an assigned error that his convictions for taking indecent liberties with HR (Specification 6 of Charge I) and aggravated sexual abuse of HR (Specification 1 of the Additional Charge) constitute an unreasonable multiplication of charges (UMC). We have given full and fair consideration to appellant's claim of UMC and to the matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

[4] In 2013, an enlisted panel convicted appellant, contrary to his pleas, of one specification of rape of a child, one specification of carnal knowledge, two specifications of aggravated sexual assault of a child, one specification of aggravated sexual abuse of a child, two specifications of aggravated sexual contact with a child, eight specifications of indecent liberties with a child, two

(continued . . .)

App. 6 Jan. 2017) (mem. op.). This court set aside the findings and sentence due to a *Hills*[5] error and authorized a rehearing by the same or a different convening authority. *Adams*, 2017 CCA LEXIS 6, at *1, 8.

Upon remand to the convening authority, the government preferred a second charge sheet alleging substantively the same charges against appellant on 11 May 2017. On 3 August 2017, the government preferred an additional charge. We will refer to these charges collectively as the "2017 charges."

Thus, by August 2017, appellant was facing both the remanded 2012 charges and the newly preferred 2017 charges. A comparison of the two sets of charges revealed three categories of specifications. First, some specifications are substantially identical in both charge sheets.[6] Second, some specifications differ

---

(. . . continued)

specifications of sodomy with a child, one specification of producing child pornography, one specification of possessing child pornography, and one specification of possessing child erotica, in violation of Articles 120, 125 and 134, UCMJ. The panel sentenced appellant to a dishonorable discharge, confinement for life with eligibility for parole, total forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority disapproved the finding of guilty for possession of child erotica, approved the remaining findings of guilty, and approved the sentence. *Adams*, 2017 CCA LEXIS 6 at *1-2.

[5] In *United States v. Hills*, 75 M.J. 350, 352 (C.A.A.F. 2016), our Superior Court held it is constitutional error for a military judge to give an instruction to a panel that permits Military Rule of Evidence [Mil. R. Evid.] 413 to be applied to evidence of charged sexual misconduct. Our Superior Court's ruling in *Hills* also applies to cases involving Mil. R. Evid. 414. *See United States v. Tanner*, 63 M.J. 445, 448-49 (C.A.A.F. 2006); *United States v. Bonilla*, ARMY 20131084, 2016 CCA LEXIS 590, at *22-23 (Army Ct. Crim. App. 30 Sep. 2016). During appellant's 2013 court-martial, the military judge's instruction to the panel allowed the consideration of charged misconduct, under Mil. R. Evid. 414, as evidence of appellant's propensity to commit the other charged offenses, "even if [the panel] is not convinced beyond a reasonable doubt that the accused is guilty of those offenses . . . ." *Adams*, 2017 CCA LEXIS 6, at *3-4.

[6] The first category of identical charges include: Specifications 2, 3, and 4 of Charge II (indecent liberties with a child in violation of Article 134), and Specification 1 of Charge IV (sodomy of a child in violation of Article 125). We note appellant claims Specification 2 of Charge II is a new offense and classifies it under category 3. Appellant explains that this specification "[c]orresponds to Specification 3 of Charge II [from the 2012 charge sheet], but the government

(continued . . .)

3

ADAMS—ARMY 20130693

only in that the 2017 charge sheet amended the time period when the offense was committed.[7]  For all offenses in the second category, the time period when the offense was committed was amended from "between on or about 1 October 2007 and on or about 31 March 2008," in the 2012 charges to "between on or about 16 July 2008 and on or about 14 August 2008," in the 2017 charges.  The third category consists of five new specifications preferred in 2017.[8]

A second Article 32, UCMJ, hearing was directed to consider all of the charges.  Both the 2012 and 2017 charges were then forwarded to the convening authority, who dismissed "without prejudice" the 2012 charges and referred the 2017 charges to a general court-martial.  At trial, appellant moved to dismiss the 2017 charges for lack of jurisdiction asserting the convening authority had exceeded the mandate of this court's remand.  The military judge denied the motion and appellant petitioned this court to issue a writ of mandamus and a writ of habeas corpus.  Appellant's writ asserted that further prosecution was barred by the Double Jeopardy Clause and the court-martial lacked jurisdiction over the charges.  This court denied appellant's petition. *Adams v. Cook*, ARMY MISC 20170581, 2018 CCA LEXIS 30 (Army Ct. Crim. App. 23 Jan. 2018) (mem. op.).

At appellant's rehearing, appellant was convicted of sexually abusing HP, his step-daughter, when she was between the ages of nine and ten.  On various

---

(. . . continued)
changed the modality by alleging [appellant] 'cause[d]' HR to touch, instead of 'directing' HR to touch as alleged in the 2012 charges."  After appellant submitted his brief to this court, the Court of Appeals for the Armed Forces (CAAF) issued its decision in *United States v. Moore*, 79 M.J. 483, 487-88 (C.A.A.F. 2020), which held that amending the modality of the offense prior to referral does not implicate the statute of limitations.  Thus, we consider Specification 2 of Charge II as an identical charge under the first category.

[7] The offenses with a differing date range in the second category include: Specification 1 of Charge I (aggravated sexual assault of a child in violation of Article 120); Specification 3 of Charge I (indecent liberties with a child in violation of Article 120); and Specification 1 of Charge III (production of child pornography in violation of Article 134).

[8] The new offenses in the third category include:  Specification 1 of Charge I (indecent acts with a child in violation of Article 120); Specification 6 of Charge I (indecent liberties with a child in violation of 120); Specification 5 of Charge II (indecent liberties with a child in violation of Article 134); Specification 1 of The Additional Charge (aggravated sexual abuse of a child in violation of 120); and Specification 3 of The Additional Charge (abusive sexual contact of a child in violation of 120).

4

occasions, appellant had HP penetrate her vagina with her fingers and a sex toy, requested she take her shirt off so he could see her breasts, requested she touch appellant's penis, and anally penetrated her with his penis.

Appellant was also convicted of sexually abusing his niece, HR, when she was thirteen years old. On various occasions, appellant had HR penetrate her vulva with a sex toy, requested she perform oral sex on him, requested she lift her shirt and fondled her breasts with both of his hands, requested she take photographs of her naked breasts, penetrated HR's vagina with his penis, and on one occasion, photographed his penis while penetrating HR's vagina.

## LAW AND DISCUSSION

### A. *Whether the Court-Martial Lacked Jurisdiction*

Appellant contends the convening authority exceeded the scope of this court's remand by dismissing the 2012 charges and referring the 2017 charges, thereby depriving the court-martial of jurisdiction. We disagree and find that upon remand a convening authority may take any lawful action regarding the offenses, including dismissal, amendment of charges, and referral of new charges.

Jurisdiction is a question of law that this court reviews de novo. *United States v. Nealy*, 71 M.J. 73, 75 (C.A.A.F. 2012). Article 66(d), UCMJ, permitted this court to to set aside the findings and sentence of appellant's first court-martial and authorize a rehearing by the same or a different convening authority. In cases where a rehearing is authorized, "[t]he convening authority may in the convening authority's discretion order a rehearing. A rehearing may be ordered as to some or all of the offenses . . . ." Rule for Courts-Martial [R.C.M.] 1107(e)(2).[9] Further, the convening authority is authorized to refer additional charges "together with charges as to which a rehearing has been directed." R.C.M. 1107(e)(2)(D).[10] We find this

---

[9] In *United States v. Carter*, 76 M.J. 293 (C.A.A.F. 2017), the Air Force Court of Criminal Appeals set aside the findings, but *did not* authorize a rehearing. *Id*. at 294. Nonetheless, the convening authority sent the case to be retried. The CAAF held the convening authority exceeded his authority and the scope of the remand. *Id*. at 295-96. In contrast, in appellant's case this court *did authorize* a rehearing. Thus, the convening authority had jurisdiction over the offenses when this court remanded the case.

[10] Rule for Courts-Martial 810(a)(3) also envisions new charges at a rehearing:

*Combined Rehearings*. When a rehearing on sentence is

(continued . . .)

5

discretionary language inherently allows for the dismissal of some or all of the charges, for the referral of additional charges, and for the convening authority to amend the charges to conform to the evidence. *See Moore*, 79 M.J. at 486 (citing *United States v. Stout*, 2019 CAAF LEXIS 648, at \*4 (C.A.A.F. 22 Aug. 19)). This court stated previously:

> When we authorize a rehearing we see our decision as returning the case to the convening authority who, subject to rules governing speedy trial, double jeopardy, unreasonable multiplication of charges, and other rules, may take any lawful action regarding the offenses. Dismissal and amendment of charges are among such lawful actions. While a rehearing is a continuation of the former proceeding, that does not make the charges immutable or cause us to construe them as having been carved into granite.

*Adams*, 2018 CCA LEXIS 30 at \*11-12 (citing *United States v. Von Bergren*, 67 M.J. 290, 291 (C.A.A.F. 2009) (noting Von Bergren received a rehearing on an amended specification and the court did not view the issue as one of jurisdiction, but rather whether a new Article 32, UCMJ, hearing should have been granted) (internal quotation marks and citation omitted).

In sum, this court's remand "had the effect of vacating the proceedings and leaving the case as though no trial had been had," *Johnson v. United States*, 19 C.M.A. 407, 408, 42 C.M.R. 9, 10 (1970), and "no vestiges of the former court-martial linger[ed]." *Howell v. United States*, 75 M.J. 386, 392 (C.A.A.F. 2016). As such, the convening authority acted within his discretion when he referred new charges, amended charges, and dismissed charges. Accordingly, the court-martial had jurisdiction over the 2017 offenses.

### B. Whether Double Jeopardy Barred the 2017 Charges

Appellant asserts the Double Jeopardy Clause barred the government from proceeding with the 2017 charges that were either identical or contained a date range shift from the 2012 charges (categories 1 and 2). We disagree and find the original

---

(. . . continued)
> combined with a trial on the merits of one or more specifications referred to the court-martial *whether or not such specifications are being tried for the first time or reheard*, the trial will proceed on the merits. . . ."

(emphasis added).

jeopardy from the 2012 charges continued uninterrupted during the appellate process and the rehearing on the 2017 charges.

Whether a successive prosecution is barred by the Double Jeopardy Clause is a question of law we review de novo. *United States v. Campbell*, 71 M.J. 19, 26-27 (C.A.A.F. 2012). The Fifth Amendment to the United States Constitution commands that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V., cl. 2. The Double Jeopardy Clause consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause does not preclude the government from retrying an accused whose conviction was set aside due to an error in the proceedings. *Burks v. United States*, 437 U.S. 1, 14 (1978).

In the military justice system, protections against double jeopardy are provided through operation of Article 44, UCMJ ("former jeopardy"). *Burtt v. Schick*, 23 M.J. 140, 142 (C.M.A. 1986). Pursuant to Article 44, jeopardy attaches after the introduction of evidence.[11] Once jeopardy attaches, an accused "may not be retried for the same offenses without consent once jeopardy has terminated." *United States v. Easton*, 71 M.J. 168, 172 (C.A.A.F. 2012) (citing *Richardson v. United States*, 468 U.S. 317, 325 (1984)). A successful double jeopardy claim has two temporal components: first, that jeopardy attaches; and second, that it terminates. *Id*.

Jeopardy terminates, and therefore precludes a subsequent court-martial, if charges are dismissed in the absence of manifest necessity. *Easton*, 71 M.J. at 172 (C.A.A.F. 2012). The "manifest necessity" standard requires "a 'high' degree of necessity." *Id*. at 173 (citing *Arizona v. Washington*, 434 U.S. 497, 506 (1978)). "The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases." *Id*. (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)).

Appellant contends that the rehearing was a continuation of the first trial. *See United States v. Beatty*, 25 M.J. 311, 314 (C.M.A. 1987) (citation omitted). As such, appellant argues jeopardy attached to the 2012 charges when evidence was admitted during the first trial, and that jeopardy terminated when the convening authority dismissed those charges on 4 August 2017. Further, appellant argues the government lacked any manifest necessity to dismiss the 2012 charges.

---

[11] In contrast, in civilian trials, jeopardy attaches when the jury is empaneled. *See Crist v. Bretz*, 437 U.S. 28, 35 (1978).

We agree with appellant that jeopardy attached to appellant's convictions for the category 1 and 2 offenses at the first trial. We also agree that appellant's rehearing was a continuation of the first trial. However, under the principle of continuing jeopardy, jeopardy did not terminate when the convening authority dismissed the 2012 charges. The original jeopardy continued uninterrupted because the "successful appeal of a judgment of conviction, on any ground other than the sufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." *United States v. Scott*, 437 U.S. 82, 90-91 (1978); *see also Burks v. United States*, 437 U.S. 1 (1978); *United States v. McMurrin*, 72 M.J. 697, 704-05 (N.M. Ct. Crim. App. 2013).[12]

In finding that the convening authority's dismissal did not terminate jeopardy in appellant's case, we also consider whether the three constitutional protections listed in *Pearce* are implicated.[13] We find they are not. First, appellant was not

---

[12] The convening authority's decision to dismiss and re-refer the same charges in appellant's case is similar to the Navy-Marine Corps Court of Criminal Appeals' (NMCCA) dismissal and the convening authority's re-referral of the same charge in *McMurrin*. In *McMurrin*, the NMCCA set aside and dismissed appellant's conviction for negligent homicide, affirmed the remaining findings of guilty, set aside the sentence, and authorized a rehearing on sentence only. 72 M.J. at 700. The convening authority referred additional charges to be combined with the rehearing on sentence, one of which was a charge and specification for negligent homicide based on the same underlying conduct prosecuted at the first trial. The NMCCA found that its decision setting aside McMurrin's negligent homicide conviction did not terminate jeopardy for that charge. *Id*. at 704. Instead, the court found the original jeopardy continued uninterrupted during the appellate process and the rehearing. *Id*. Further, the NMCCA noted that its dismissal of McMurrin's conviction did not implicate any of the double jeopardy concerns listed in *Pearce*, 395 U.S. at 717.

[13] Because we find jeopardy never terminated, we need not decide whether the government lacked manifest necessity to dismiss the 2012 charges. However, we will briefly address appellant's reliance on our Superior Court's decision in *Easton*, which we find readily distinguishable. In *Easton*, the convening authority withdrew and dismissed charges the day of trial because the government failed to procure sufficient evidence to convict, which the CAAF found did not constitute manifest necessity. 71 M.J. at 174. In contrast, in appellant's case, the government dismissed the 2012 charges because "[i]n reviewing the evidence, [the government] believed that the date ranges which [are] reflected on the 2017 charge sheet more accurately reflect the misconduct committed by [appellant]." Essentially, the government made changes to the charges and specifications to conform to the

(continued . . .)

8

acquitted of any of the specifications in categories 1 and 2. Second, appellant's convictions were not final because this court's decision set aside those findings and authorized a rehearing. Third, appellant was not subject to multiple punishments because this court set aside the sentence from appellant's first trial and appellant has been credited the time he has served in confinement against his current sentence.

Accordingly, appellant's rehearing was not a double jeopardy violation within the intent of the Fifth Amendment. Appellant's successful appeal did not preclude the convening authority from dismissing the 2012 charges, referring those same charges and amended charges, and re-prosecuting appellant.

### C. Whether the Statute of Limitations Expired

Next, we consider appellant's claim the statute of limitations [SOL] expired for Specification 5 of Charge II. Appellant claims that as a result of Congress' retroactive amendment to Article 43, UCMJ, in the National Defense Authorization Act for 2017 [NDAA 2017], the SOL for Specification 5 of Charge II (indecent liberties with a child in violation of Article 134, UCMJ) expired in 2010.[14] As we

---

(. . . continued)
evidence expected to be presented at trial. As our Superior Court recently held in *United States v. Stout*, this is an entirely permissible action. 2019 CAAF LEXIS 648, at *4 (holding "[t]he words of Article 34 are clear and unambiguous: before referral, changes may be made to conform the specifications to the evidence contained in the report of the Article 32 investigating officer.").

[14] Appellant also claims the SOL expired for Specifications 2, 3, and 4 of Charge II (indecent liberties with HP, in violation of Article 134) and Specification 1 of Charge IV (sodomy of HP in violation of Article 125). Appellant argues the SOL expired when the convening authority dismissed the 2012 charges. We disagree. The savings clause of Article 43(g), UCMJ, allows charges to be dismissed and re-referred within 180 days if the charges are "defective or insufficient *for any cause . . . .*" (emphasis added). Although Specification 1 of Charge IV is identical to the corresponding 2012 charge, we note that Specifications 2, 3, and 4 of Charge II have slight differences in wording compared to the corresponding 2012 charges. In light of the CAAF's decision in *Stout*, 2019 CAAF LEXIS 648, at *4, holding pre-referral changes are permissible, we find appellant's argument regarding these offenses meritless. *See also United States v. Moore*, 79 M.J. at 486 ("Nothing in Article 43, UCMJ, suggests that a charge or specification that was timely when received by the [Summary Court-Martial Convening Authority] might become untimely if the convening authority makes changes . . . [t]hat are authorized by Article 34(c),

(continued . . .)

explain below, we do not find the SOL expired for this offense as it would lead to an absurd result contrary to Congress' intent.

The applicable SOL is a question of law, which we review de novo. *United States v. Mangahas*, 77 M.J. 220, 222 (C.A.A.F. 2018) (citing *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008). An accused is subject to the SOL in force at the time of the offense. *Toussie v. United States*, 397 U.S. 112, 115 (1970). Generally, subsequent amendments do not apply because there is both a presumption against retroactive legislation, *see INS v. St. Cyr*, 533 U.S. 289, 316 (2001), and a presumption in favor of repose, *United States v. Habig*, 390 U.S. 222, 227 (1968). "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires the result." *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988).

Prior to 2003, the SOL for child abuse offenses was five years. UCMJ art. 43(b)(1) (2000 & Supp. II 2003). From 2003 to 2017, Congress amended the SOL for child abuse offenses three times. The first child abuse specific amendment occurred in 2003 when Congress amended Article 43(b)(1), UCMJ, to except from the general five-year SOL certain listed child abuse offenses, including indecent liberties with a child. NDAA 2004, Pub. L. No. 108-136, § 551, 117 Stat. 1392, 1481 (2003). The 2003 amendment provided that the SOL for these offenses would expire when the child reached the age of twenty-five years. *Id*. This was the SOL in effect at the time appellant committed the offense in Specification 5 of Charge II.

The second amendment occurred in 2006 when Congress increased the SOL for child abuse offenses to "the life of the child or within five years after the date on which the offense was committed, whichever provides a longer period . . . ." NDAA 2006, Pub. L. No. 109-163, §§ 552-53, 119 Stat. 3136, 3264-63 (2006).

Before we address the third amendment to Article 43, it is important to note that while Congress expanded the SOL for child abuse offenses, Congress also expanded Article 120, UCMJ. This expansion included a prohibition against "indecent liberties with a child" in Article 120(j), UCMJ.[15] The preface to the 2008 *Manual for Courts-Marital* [*MCM*] states the offense of indecent acts or liberties with a child "[w]as removed as it was subsumed into the new Article 120

---

(. . . continued)
UCMJ."). Therefore, the government's decision to dismiss the 2012 charges and make slight changes pre-referral fits within the savings clause allowing for dismissal if the charges are "insufficient for any cause."

[15] *See* NDAA 2006, Pub. L. No. 109-163, § 552, 119 Stat. 3136, 3258 (2006); *see also United States v. Avery*, 79 M.J. 363, 367 (C.A.A.F. 2020) (discussing expansion of Article 120).

provision."[16]  Then, in 2011, Congress substantially revised Article 120, UCMJ, by creating Article 120b.[17]  This new Article 120b included a prohibition against committing lewd acts upon children.  UCMJ art. 120b(c).

The third amendment to Article 43 occurred with the enactment of the 2017 NDAA which expanded the SOL for child abuse offenses to "the life of the child or within ten years after the date on which the offense was committed, whichever provides a longer period . . . ."  NDAA 2017, Pub. L. 114-328, § 5225(a), 130 Stat. 2000, 2910 (2016).  Congress made this amendment retroactive.  *Id*. at § 5225(f), 130 Stat. at 2910 ("The amendments made by subsections (a), (b), (c), and (d) shall apply to the prosecution of any offense committed before, on, or after the date of enactment of this subsection if the applicable limitation period has not yet expired.").[18]

The 2017 NDAA also struck indecent liberties from the list of child abuse offenses in Article 43, UCMJ and inserted "section 920, 920a, 920c, or 930 of this title (article 120, 120a, 120b, 120c, or 130) . . . ."[19]  Consequently, appellant claims his conviction for Specification 5 of Charge II (indecent liberties with a child under Article 134, UCMJ) now falls under Article 43(b), which carries a five-year SOL.  We do not believe Congress intended this result.

---

[16] We note the similarities between the definitions of "indecent" under Article 134 and "lewd act" under Article 120.  Under Article 134, "indecent" was defined as that *form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations*."  *MCM*, pt. IV, ¶90.c. (2002 ed.). (emphasis added).  "Lewd act" includes "any indecent conduct, intentionally done with or in the presence of a child, including via any communication technology, that amounts to a *form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations*."  UCMJ art. 120b(a)(h)(5)(D); *MCM*, pt. IV, ¶45.a.(h)(5)(D) (2012 ed.).  (emphasis added).

[17] *See* NDAA 2012, Pub. L. No. 112-81, § 541, 125 Stat. 1298, 1407-09 (2011).

[18] The 2018 NDAA clarified that the 2017 NDAA amendments to Article 43, UCMJ, "shall be applied as in effect on December 22, 2016."  *See* NDAA 2018, Pub. L. No. 115-91, § 531(n)(2), 131 Stat. 1283, 1387 (2017).  This clarification has little impact on appellant's case as Specification 5 of Charge II was preferred on 11 May 2017, after the effective date.

[19] *See* NDAA 2017, Pub. L. 114-328, § 5225(d), 130 Stat. 2000, 2910 (2016) (listing "conforming amendments").

As we discern whether Congress intended to reduce the SOL for indecent liberties with a child to five years and no longer treat the offense as a child abuse offense, we consider well-established principles of statutory construction. *United States v. McNutt*, 62 M.J. 16, 20 n.27 (C.A.A.F. 2005). Statutory construction begins with a look at the plain language of a rule. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42 (1989). The plain language will control, unless use of the plain language would lead to an absurd result. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Going behind the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 75 (1982) (citation and quotation marks omitted).

On its face, the plain language of the 2017 NDAA amendment to Article 43 does not appear ambiguous. However, when considered in conjunction with the legislative history of the statute and the nature of the offense in Specification 5 of Charge II, we find excluding indecent liberties in violation of Article 134 from the list of child abuse offenses would lead to an absurd and unintended result.[20] In Specification 5 of Charge II, appellant was convicted of indecent liberties with a child by requesting his ten year-old step-daughter remove her shirt so he could look at her breasts. Not only does common sense dictate that appellant's conduct constitutes child abuse, we note this conduct would currently be punishable under Article 120b, UCMJ, as sexual abuse of a child by indecent conduct, which is included as an offense constituting child abuse in the 2017 NDAA.[21]

---

[20] *See Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892) (applying the absurdity doctrine which permits courts to avoid an absurd application of an otherwise clear statute); *see also Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989). In *Public Citizen*, the Supreme Court considered the meaning of the word "utilize" in the Federal Advisory Committee Act (FACA). *Id.* at 443. The Court held the plain language of the statute would extend FACA's requirements in a manner that would be contrary to FACA's legislative intent and the Court was "[c]onvinced that Congress did not intend that result." *Id.* at 453. Similar to the FACA, the 2017 NDAA's legislative history, as well as Congress' previous amendments to Articles 43 and 120, compel us to find that the plain reading of the statute would limit its application in a manner that Congress did not intend.

[21] The Supreme Court relied on common sense in interpreting a provision of the Indian Regulatory Gaming Act in *Chicksaw Nation v. United States*, 534 U.S. 84 (2001). In *Chicksaw*, the Supreme Court considered a parenthetical in one of the provisions of the Act which explicitly cross-referenced another chapter exempting the Choctaw and Chicksaw Nations from paying certain taxes. *Id.* at 86-87. Despite the parenthetical's explicit reference to the exemption, the Court held that "[i]n context, *common sense* suggests that the cross-reference is simply a drafting

(continued . . .)

The totality of the 2017 NDAA's legislative history makes Congress' intent abundantly clear: Congress intended to increase, not decrease, the SOL for child abuse offenses and sexual assault offenses. As a starting point, one of the main purposes of the 2017 NDAA was to implement "[t]he first comprehensive reform of the Uniform Code of Military Justice in decades." H. Rep. 114-537, at 5 (4 May 2016) (Comm. Rep.). The stated "rationale" for the bill was "[t]o enhance the rights of victims . . . ." *Id*. at 2-5. The Senate report on the bill explicitly states, "[t]he committee recommends a provision that would amend [Article 43, UCMJ] to extend the statute of limitations applicable to child abuse offense from the current [five] years or the life of the child, whichever is longer, to [ten] years or the life of the child, whichever is longer." S. Rep. 114-255, at 601 (18 May 2016) (Comm. Rep.); *see also* H. Rep. 114-537, at 606 (4 May 2016) (Comm. Rep.) (stating amendment would increase the SOL for child abuse offenses).

Notably, in our review of the legislative history, we found no discussion indicating an intent to no longer consider indecent liberties with a child as a child abuse offense or reduce the SOL for that offense. Nonetheless, appellant urges this court to interpret this silence as an affirmative indication of Congress' intent. Appellant's argument is unreasonable when considered in light of the migration of the child abuse offenses under Article 134 to Article 120b, in conjunction with the progressive increase in the statute of limitations for child abuse offenses over the past fifteen years.

Ultimately, we believe this is one of those rare and exceptional circumstances where the application of the statute as written would produce a result "demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). In drafting the 2017 NDAA, we do not believe Congress intended the absurd result of drastically reducing the SOL for indecent liberties with a child under Article 134, UCMJ, from the life of the child or within ten years after the date on which the offense was committed, whichever provides a longer period, to

---

(. . . continued)

mistake, a failure to delete an inappropriate cross-reference in the bill that Congress later enacted into law. *Id*. at 91. (emphasis added) (citing *Little Six, Inc. v. United States*, 229 F. 3d 1383, 1385 (CA Fed. 2000) (Dyk, J., dissenting from denial of rehearing en banc) ("The language of the provision has all the earmarks of a simple mistake in legislative drafting."). Similarly, we believe the omission of indecent liberties as a child abuse offense in the 2017 NDAA was a drafting mistake as a result of the migration of indecent liberties from Article 134 to lewd acts in Article 120b.

the pre-2003 period of merely five years.[22]  Appellant's reading of the amendment would defeat the statutory purpose of the legislation and would lead to a result "so bizarre that Congress could not have intended it." *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) (quoting *Griffin*, 458 U.S. at 575).  Accordingly, we find the statute of limitations for Specification 5 of Charge II has not expired.[23]

*D. Legal and Factual Sufficiency*

Lastly, we address appellant's claim that his conviction for producing child pornography (Specification 1 of Charge III) is legally and factually insufficient because HR only testified that she "saw a flash," and the photo was not introduced into evidence.  Under the specific circumstances of this case, we agree.

We review questions of legal and factual sufficiency *de novo*.  UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  In applying this test, "we are bound to draw every reasonable inference from the

---

[22] The Supreme Court found the evolution of a statute crucial to its understanding of Congress' intent in *United States v. X-Citement Video*, 513 U.S. 64 (1994).  *In X-Citement Video*, the Court considered whether the term "knowingly" in the Protection of Children Against Sexual Exploitation Act modified one of the subsections of the Act.  *Id*. at 68.  The Court acknowledged that the most "natural" reading of the statute suggests that the term "knowingly" modifies only the surrounding verbs and therefore would not apply to the subsections.  *Id*.  However, the Court noted the legislative history of the statute evolved over a period of years and "[c]an be summarized by saying that it persuasively indicates that Congress intended the term 'knowingly' apply to [the subsections]." *Id*. at 77.  The Court held that interpreting the statute otherwise would produce "positively absurd" results.  *Id*. at 69.  Similarly, we cannot ignore Congress' firm focus on criminalizing and extending the SOL for child abuse and sexual assault crimes over the past two decades.  The 2017 NDAA's obvious legislative history convinces us that Congress did not intend to exclude indecent liberties with a child from the list of child abuse offenses.

[23] We note that at the time appellant committed the offense in Specification 5 of Charge II, he was on notice that the SOL was until HP reached the age of twenty-five.  HP was under the age of twenty-five when the 2017 charges were preferred.  As such, there is no violation of the Ex Post Facto Clause of the Constitution.  *See* Art. I, § 9, cl. 3; *Stogner v. California*, 539 U.S. 607, 610 (2003).

evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation omitted). We take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Wheeler*, 76 M.J. 564, 568 (quoting *Washington*, 57 M.J. at 399).

As charged in this case, appellant's conviction for production of child pornography required the government to prove the following elements: (1) that the accused knowingly and wrongfully produced child pornography; and (2) that under the circumstances, the conduct of the accused was of a nature to bring discredit upon the armed forces. UCMJ art. 134, *MCM*, pt. IV, ¶60.b. (2005 ed.).

At trial, HR testified appellant stated he wanted to take a picture "of his penis going inside [HR's] vagina." While in appellant's bedroom, appellant removed his pants, laid down on his bed, and told HR to remove her pants and underwear and to get on top of him. Appellant "proceeded to stick his penis inside of [HR], put his hands on [HR's] hips, pulled [HR] down, and then pushed [HR] up a few times." HR testified appellant took a picture while using one hand to hold onto her hip and the other hand to take the picture. When asked how she knew that the camera took the picture, HR responded, "[t]here was a flash." HR did not testify that she ever saw the photo and the photo was not entered into evidence. Law enforcement seized twenty-three digital devices from appellant's home, but never recovered the photo.

We are not convinced beyond a reasonable doubt appellant successfully took a photo depicting child pornography. To be clear, we are not holding the government is required to introduce into evidence an alleged photo containing child pornography to prove the offense. In fact, we find HR's detailed description of the sex act would satisfy the six factors developed in *United States v. Dost*, if captured in a photo. 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987) (listing factors for determining whether a photo contains a "lascivious exhibition" constituting child pornography for purposes of Article 134, UCMJ). Rather, what raises doubt is the lack of any evidence, testimony or otherwise, confirming the photo was successfully taken and what the photo actually depicted (not just what appellant intended to capture).

This case can be contrasted with the Air Force Court of Criminal Appeals' holding in *United States v. Simmons*, 2019 CCA LEXIS 156 (A.F. Ct. Crim. App. 9

Apr. 19). In *Simmons*, appellant was convicted of producing child pornography. *Id.* at *30-31. At trial, the government did not introduce the video. *Id.* However, the victim testified that she viewed the video and described the sexual act depicted in the video, which satisfied the *Dost* factors. *Id.* at *33.

In appellant's case, neither HR nor any other person testified they saw the photo. We are not convinced beyond a reasonable doubt the government proved the first element of the offense—that appellant successfully took the photo that HR described. Accordingly, we find the evidence introduced at trial legally and factually insufficient to support appellant's conviction for production of child pornography. We set aside and dismiss Specification 1 of Charge III in the decretal paragraph.

We are able to reassess appellant's sentence in accordance with principles set forth in *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). To reassess the sentence, we must be able to reliably conclude that, in the absence of error, the sentence "would have been at least of a certain magnitude." *Sales*, 22 M.J. at 307-98. First, we consider that the dismissal of appellant's conviction for production child pornography is not a drastic change in the penalty landscape. The maximum punishment for production of child pornography was thirty years.[24] Meanwhile appellant remains convicted of aggravated sexual assault of a child, six specifications of indecent liberties with a child, indecent acts with a child, sodomy of a child, aggravated sexual abuse of a child, and abusive sexual contact with a child. The maximum punishment for appellant's remaining convictions is Life plus 123 years of confinement. As such, dismissing appellant's conviction for production of child pornography is not a significant reduction in the maximum punishment.

---

[24] Appellant was charged to have committed the offense of production of child pornography between on or about 16 July 2008 and on or about 14 August 2008. In 2008, production of child pornography was not an offense listed under Article 134, UCMJ. The maximum punishment for an offense charged under Article 134, UCMJ, clauses 1 and 2, and not otherwise listed in the *MCM*, pt. IV, may be determined by reference to the maximum punishment for violation of a federal statute that proscribes and criminalizes the same criminal conduct and mental state included in the specification. *See United States v. Leonard*, 64 M.J. 381, 381-82 (C.A.A.F. 2007). In 2008, the federal statute criminalizing the production of child pornography provided a sentence of "not less than 15 years nor more than 30 years." 18 U.S.C. § 2251(e). Applying R.C.M. 1003(c)(1)(B)(ii) (2008 ed.), the maximum punishment would also include a dishonorable discharge and forfeiture of all pay and allowances.

Second, appellant's remaining convictions capture the gravamen of appellant's criminal conduct, namely that he routinely sexually abused his step-daughter and niece when they were children. Third, the same aggravating circumstances presented during sentencing proceedings at trial remain admissible and relevant during our reassessment. Fourth, appellant was sentenced by a military judge to a dishonorable discharge, confinement for forty-three years, total forfeiture of all pay and allowances, and reduction to E-1. Finally, the remaining offenses are the type that we, as appellate judges, have the experience and familiarity with to reliably determine what sentences would have been imposed at trial by the military judge.

Examining the entire record and applying the principles set out in *Winckelmann*, we are able to reliably determine to our satisfaction that absent the conviction for production of child pornography, appellant's sentence would have been at least a dishonorable discharge, confinement for forty-three years, total forfeiture of all pay and allowances, and reduction to E-1. *Winckelmann*, 73 M.J. at 13-16.

## CONCLUSION

The finding of guilty for Specification 1 of Charge III is SET ASIDE and Specification 1 of Charge III is DISMISSED. The remaining findings of guilty and sentence are AFFIRMED.

All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Chief Judge KRIMBILL and Judge RODRIGUEZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

17